# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 14-0373** (Calhoun County 13-F-6)

**Ordie Rogers, Jr.,**
**Defendant Below, Petitioner**

**FILED**

January 9, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner and defendant below, Ordie Rogers, Jr., by counsel Pancho G. Morris and Kevin B. Postalwait, appeals the March 4, 2014, order of the Circuit Court of Calhoun County that denied his motion for reconsideration of sentence of one to three years in prison. Respondent and plaintiff below, the State of West Virginia, by counsel Derek A. Knopp, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted on January 17, 2013, on the felony offense of Child Neglect Resulting in Death in connection with the death of his two-month old daughter, D.R. The evidence revealed that, on February 15, 2012, the baby was shaken by her biological mother, who then hit the baby's head on the side of the crib. It does not appear that petitioner witnessed the incident. The following day, petitioner noticed that D.R. was having seizures, that she was not getting sufficient oxygen to her brain, and that her eyes were rolling back into her head; however, neither petitioner nor the baby's mother took her to the emergency room until February 17, 2012. When asked by the attending physician as to whether D.R. may have rolled off of something or if someone may have been rough with her, both parents answered in the negative. The physician told police that he was not aware that he was dealing with a head injury for approximately one and a half hours and that if he had known of D.R.'s seizure activity, he could have altered his treatment of her. D.R. died on February 19, 2012. The autopsy report indicated, among other things, that D.R.'s death was "[c]onsistent with death due to abusing head trauma by physical assault at the hands of caretaker(s) . . . ."

As indicated above, petitioner was indicted on the felony offense of Child Neglect Resulting in Death. On November 26, 2013, petitioner entered a no contest plea to the lesser

included offense of Child Neglect Causing Bodily Injury[1] and a conviction order was entered on December 16, 2013, that, among other things, found petitioner guilty of Child Neglect Causing Bodily Injury and ordered the preparation of a pre-sentence investigation report for the court's consideration in sentencing. Petitioner was provided a copy of the report on January 31, 2013. A sentencing date was scheduled for February 18, 2014.

At the sentencing hearing, the circuit court inquired of petitioner and his counsel as to whether they had the opportunity to review the pre-sentence investigation report and further, whether they had any additions or corrections thereto. Both petitioner and his counsel responded in the negative to the latter question. Additionally, petitioner advised the court that he agreed that the information in the report was accurate. By way of evidence of mitigation, petitioner presented his own testimony and the testimony of his father. Thereafter, the circuit court entered a sentencing order on February 18, 2014, in which it sentenced petitioner to one to three years of incarceration and declined to provide that petitioner be eligible for probation for, inter alia, the following reasons: petitioner had not completely accepted criminal responsibility for his actions; he benefited greatly from the plea bargaining process; he caused an inordinate delay in getting the baby medical care, which contributed to her death; according to the medical evidence, the baby showed signs of medical distress long before she was taken to hospital; the seriousness of the crime; the baby may have survived but for petitioner's neglect; and an alternative sentence or probation would have unduly depreciated the seriousness of the crime.

Subsequently, on February 20, 2014, petitioner filed a motion for reconsideration of sentence[2] in which he argued, in relevant part, that the pre-sentence investigation report failed to include a Level of Service /Case Management Inventory ("LS/CMI") risk and needs assessment, and as a result, the report failed to include any objective information regarding petitioner's risk to the community if sentenced to probation or some other alternate sentencing. Petitioner argued that if an LS/CMI assessment had been completed, it would have shown that petitioner is not a risk to the community. He further argued that the failure to include the assessment "resulted in a denial of [petitioner's] opportunity to argue favorably for probation or some other alternative sentencing short of [incarceration] and robbed the Court of an opportunity to consider, objectively, releasing [petitioner] on an alternative sentence." By order entered March 4, 2014, the circuit court concluded that petitioner failed to raise any objections to the pre-sentence investigation report at the time of sentencing and that, as a result, any objection thereto was waived. The circuit court denied petitioner's motion for reconsideration of sentence. This appeal followed.

This Court reviews a circuit court's order denying a motion for reconsideration of sentence under the following standard:

"In reviewing the findings of fact and conclusions of law of a circuit court concerning an order on a motion made under Rule 35 of the West Virginia Rules

---

[1] *See* W.Va. Code § 61-8D-4(a). The baby's mother pled guilty to the offense of Death of a Child by a Parent by Child Abuse, a felony. *See* W.Va. Code § 61-8D-2a.

[2] *See* W.Va.R.Crim.P. 35.

2

of Criminal Procedure, we apply a three-pronged standard of review. We review the decision on the Rule 35 motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a *de novo* review." Syllabus Point 1, *State v. Head,* 198 W.Va. 298, 480 S.E.2d 507 (1996).

Syl. Pt. 1, *State v. Georgius*, 225 W.Va. 716, 696 S.E.2d 18 (2010). We have further held that we "'review[] sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus Point 1, in part, *State v. Lucas,* 201 W.Va. 271, 496 S.E.2d 221 (1997)." *Georgius*, 225 W.Va. at 717, 696 S.E.2d at 19, syl. pt. 2, in part.

In this appeal, petitioner argues that the circuit court abused its discretion in denying his motion for reconsideration of sentence because he was not administered a LS/CMI risk and needs assessment prior to sentencing and that, consequently, the assessment was not included in the pre-sentence investigation report for the circuit court's consideration in sentencing. Petitioner contends that a LS/CMI risk and needs assessment was required by West Virginia Code § 62-12-6(a) (2013), as amended.[3] Petitioner argues that, during sentencing, the circuit court did not specifically ask him if he objected to the pre-sentence investigation report, and that petitioner did not consciously choose to forego an objection based on the absence of a LS/CMI assessment. He contends that it was error for the circuit court to conclude that by failing to timely object to the pre-sentence investigation report at sentencing, that his objection as raised in the motion for reconsideration was waived.

This Court has repeatedly cautioned litigants that "'silence may operate as a waiver of objections to error and irregularities at the trial which, if seasonably made and presented, might

---

[3] West Virginia Code § 62-12-6(a)(1) and (2) (2013), as amended by Senate Bill 371, provides, in relevant part, as follows:

(a) Each probation officer *shall*:

(1) Investigate all cases which the court refers to the officer for investigation and shall report in writing on each case;

(2) Conduct a standardized risk and needs assessment, using the instrument adopted by the Supreme Court of Appeals of West Virginia, for any probationer for whom an assessment has not been conducted either prior to placement on probation or by a specialized assessment officer. The results of all standardized risk and needs assessments are confidential[.]

(Emphasis added). The effective date of this legislation was July 12, 2013; petitioner was sentenced on February 18, 2014.

Petitioner further argues that, concomitant with this legislation, this Court directed circuit courts to consider LS/CMI assessments upon sentencing.

have been regarded as prejudicial.' *State v. Grimmer,* 162 W.Va. 588, 595, 251 S.E.2d 780, 785 (1979), *overruled on other grounds* by *State v. Petry,* 166 W.Va. 153, 273 S.E.2d 346 (1980)." *State v. Proctor*, 227 W.Va. 352, 359, 709 S.E.2d 549, 556 (2011). We have further explained that "[o]ne of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result in the imposition of a procedural bar to an appeal of that issue." *State v. LaRock,* 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996) (internal quotations and citations omitted). *See also Hanlon v. Logan Cnty. Bd. of Educ.,* 201 W.Va. 305, 316, 496 S.E.2d 447, 458 (1997) ("A party simply cannot acquiesce to . . . an error during proceedings before a tribunal and then complain of that error at a later date." (citations omitted)); *Powderidge Unit Owners Ass'n v. Highland Props., Ltd.,* 196 W.Va. 692, 703, 474 S.E.2d 872, 883 (1996) ("The law ministers to the vigilant, not those who slumber on their rights." (internal quotations and citations omitted)); *State ex rel. Cooper v. Caperton,* 196 W.Va. 208, 216, 470 S.E.2d 162, 170 (1996) ("The rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace." (citation omitted)). "In the end, the contemporaneous objection requirement serves an important purpose in promoting the balanced and orderly functioning of our adversarial system of justice." *LaRock,* 196 W.Va. at 316, 470 S.E.2d at 635.

The record on appeal is clear that petitioner received a copy of the pre-sentence investigation report on January 31, 2013, well in advance of the February 18, 2014, sentencing hearing. It is beyond cavil that he had ample opportunity to object to the report either prior to or during the sentencing hearing. *See W.Va. R. Crim. P.* 32.[4] He failed to do so. To the contrary, during sentencing, when the circuit court directly inquired of both petitioner and his counsel as to whether they had reviewed the pre-sentence investigation report, whether they had any corrections or additions to make to the report, and whether they found it to be accurate, they

---

[4] Rule 32(b)(6) of the West Virginia Rules of Criminal Procedure provides as follows:

(6) Disclosure and Objections.

(A) *Within a period prior to the sentencing hearing*, to be prescribed by the court, the probation officer must furnish the presentence report to the defendant, the defendant's counsel, and the attorney for the state. The court may, by local rule or in individual cases, direct that the probation office not disclose the probation officer's recommendation, if any, on the sentence.

(B) *Within a period prior to the sentencing hearing*, to be prescribed by the court, the parties *shall* file with the court any objections to any material information contained in or omitted from the presentence report.

(C) Except for any unresolved objection under subdivision (b)(6)(B), the court may, at the hearing, accept the presentence report as its findings of fact. For good cause shown, *the court may allow a new objection to be raised at any time before imposing sentence*.

(Emphasis added).

acquiesced to the contents of the report without equivocation and without objection on any grounds.[5] Given these facts, we conclude that the circuit court did not abuse its discretion in denying petitioner's motion for reconsideration of sentence.

For the foregoing reasons, we affirm.[6]

Affirmed.

**ISSUED:** January 9, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum

**DISSENTING:**

Justice Brent D. Benjamin

**CONCURRING AND WRITING SEPARATELY:**

Justice Allen H. Loughry II


LOUGHRY, Justice, concurring:

I concur in the Court's affirmance of the circuit court's denial of the petitioner's motion for reconsideration of sentence. The record indisputably demonstrates that the petitioner and his counsel had ample opportunity to challenge his presentence report and could have raised his current objection that the report did not contain a Level of Service/Case Management Inventory ("LS/CMI") risk and needs assessment. Having failed to do so, I agree that the petitioner waived his current objection, which formed the basis of his motion for reconsideration. I write separately to discuss briefly the LS/CMI risk and needs assessments in relation to the petitioner's sentencing.

Risk and needs assessments are provided for under West Virginia Code § 62-12-6(a)(2) (2014). This Court previously addressed these assessments in a memorandum to all circuit judges dated August 22, 2013. In this memorandum, we made clear that an LS/CMI assessment is merely a tool that may be used by circuit judges during sentencing. As we explained, the

---

[5] Petitioner was represented by the same counsel throughout the plea and sentencing proceedings and in this appeal.

[6] Given our holding herein, we decline to address whether a LS/CMI risk and needs assessment was required to have been administered to petitioner prior to sentencing and included in the pre-sentence investigation report.

assessment is to be administered as soon as possible after the sentencing in cases where there is a binding plea agreement or when a defendant waives a presentence investigation. We also recognized that no purpose would be served in conducting such an assessment where a jury has found a defendant guilty of murder without a recommendation of mercy. Ultimately, we emphasized that circuit judges do **not** have to use the results of the LS/CMI in their sentencing decisions, emphasizing that the use of the information in an LS/CMI assessment is "entirely left to [the circuit judges'] discretion."[1]

In rendering its sentencing decision in the case at bar, the circuit court had before it the following information: a two-month-old infant sustained head injuries from the physical assault upon her by her mother; neither the petitioner father nor the mother sought medical attention for their baby, even after she began having seizures; and, upon seeking such medical attention in an emergency room two days later, neither parent disclosed that their baby had suffered a head injury. The baby died from her injuries two days after presentment to the emergency room, and an autopsy revealed that her death was "due to abusing head trauma by physical assault at the hands of caretaker(s) . . . ."

The ensuing criminal charges culminated in the petitioner's guilty plea to the lesser included offense of Child Neglect Causing Bodily Injury.[2] Upon his conviction, the circuit court sentenced the petitioner to one to three years in prison. In its sentencing order, the circuit court found that the petitioner failed to completely accept criminal responsibility for his actions; that the inordinate delay in seeking medical treatment for the baby contributed to her death; that the baby might have survived but for the petitioner's neglect; and that any sentence other than a prison term would have unduly depreciated the seriousness of the crime. In consideration of the circuit court's findings, as well as the fact that circuit judges are not required to consider or use any of the information contained in an LS/CMI assessment, common sense dictates that such an assessment would not have materially impacted the petitioner's sentencing.

For the foregoing reasons, I concur in the Court's conclusion that the circuit court did not abuse its discretion in denying the petitioner's motion for reconsideration of sentence.

_____

[1] This is consistent with our law that sentencing is within the circuit court's discretion so long as the sentence is within statutory limits and is not based upon some impermissible factor. *See* Syl. Pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982).

[2] The petitioner was indicted on Child Neglect Resulting in Death. His nolo contendere plea to the lesser included offense is treated as a guilty plea. *See Humphries v. Detch*, 227 W.Va. 627, 635, 712 S.E.2d 795, 803 (2011) ("[I]n West Virginia once the nolo contendere plea is entered by a defendant, the consequences from that plea '[a]s a practical matter . . . [are] essentially the same as a guilty plea. . . .' 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers,* at §§ 41-10(C)(2) (4th ed. 2000).")